Thomas F. Roche, Appellee, v. Star Land Company, Appellant.

**APPEAL AND ERROR:** Assignment of Error—Sufficiency. An assignment of error which, in substance, states no more than that

the court *erred* in doing or not doing a certain thing, without stating *wherein* or *in what manner* the court erred, is wholly insufficient to raise any question.    (Rule 53.)

BROKERS:  Action for Commission—Pleading—Variance.  A broker who pleads a written contract as the sole basis for the recovery of commission may not recover on an oral contract.

*Appeal from Johnson District Court.*—R. P. HOWELL, Judge.

MONDAY, APRIL 10, 1916.

ACTION to recover commission on the sale of real estate. Judgment for the plaintiff in the district court.  Defendant appeals.—*Reversed.*

*W. F. Zumbrunn,* and *Ranck & Messer,* for appellant.

*Remley & Calkins,* for appellee.

GAYNOR, J.—On the 4th day of December, 1912, the plaintiff filed his petition in the district court of Johnson County, praying judgment against the defendant for $3,108.80.  His petition is divided into three counts.  In the first count, he alleges that, on the 15th day of September, 1911, he entered into a verbal contract with the defendant, by and through one of its agents, to sell or procure purchasers for certain lands of the defendant, and, for so doing, was to receive a commission of 5 per cent.; that, under and by virtue of said contract, he procured the following purchasers for the land of the defendant:  C. C. and Frank Myers; Mrs. Myers and her daughter; J. J. Miller.  On the first deal, there was due him $350; on the second deal, $350; and on the third deal, $137, making a total of $837.  In the second count, the plaintiff alleges that, on the 1st day of February, 1912, he entered into a written contract with the defendant to sell or procure purchasers for lands; that, under this contract, he sold for defendant and found purchasers ready, able, and willing to purchase on the terms and conditions under which said lands were offered for sale by the defendant; that the commission earned

under this count of his petition amounted to $5,200. The sales claimed to have been made are as follows: To H. G. Maas, on which a commission is due of $750; John Abrams, commission $1,125; Edward Maule, first deal, commission $750, second deal $750, third deal $437.50; Hoffman, commission $200; Wheeler, commission $262.50; salary from February 1, 1912, to November 1, 1912, $900; to one fourth of $100 forfeit money paid by Nelson, $25. In the third count of his petition, he claims $125.50 for expenses incurred while acting for and in behalf of the defendant. Plaintiff, in an amendment to his petition, admits that he has received from the defendant, to be applied on the total amount due him, the sum of $3,053.70. Plaintiff further says that the agreement to pay expenses was partially embodied in the written contract, and was partially made between the plaintiff and one J. M. Parkhill, agent of the defendant. The written contract is attached to the petition, the material parts of which are found in the sixth, seventh, eighth and ninth paragraphs of the contract:

"6. In consideration of the services rendered on the part of the party of the second part to be kept, done and performed, party of the first part hereby agrees to pay party of the second part a salary of $100 per month, and in further consideration, it agrees to pay party of the second part 12½ per cent. commission on all cash payment sales. 25 per cent. of any earnest money paid by second party's purchasers shall be due second party at time the earnest money contract is closed, wherein it does not exceed his commissions.

"7. The regular terms of sale shall be one-half of the purchase price in cash, at which time deed shall be delivered, and commission shall be due in full in cash, but should purchaser be able to pay but one-third down, the agent interested in such sale is to have for his commission but one-half cash and one-half paper secured by land sold, and should a payment be made greater than one-third and less than one-half, cash and paper are to be paid in proportion.

"8.   Said first party agrees to pay all commissions due and collectible when sale is fully closed, and deed and abstract have been delivered and accepted, said commission to be paid by check direct from the home office at Des Moines, Iowa.

"9.   No commission shall be due party of the second part, excepting wherein purchaser is presented to the Star Land Company by himself or by one of his agents under contract."

The defendant, for answer to the plaintiff's petition, files first a general denial, then admits that, on the 1st day of February, 1912, it entered into the written contract referred to in plaintiff's petition, and, further answering, says:

"Defendant further answering states that as to the commissions claimed by plaintiff on the Edward Maule first deal and Edward Maule second deal that the same are not properly charged or claimed for the reason that the said first deal with the said Maule was cancelled and that the said second deal with the said Maule was a transaction between said Maule and one Parkhill, an agent of the defendant company, in which the said agent of the said defendant company traded to said Maule land that personally belonged to said agent; that the said defendant company never heard of, and never knew and never was interested in said deal.   Defendant further alleges and says that, as to the third Edward Maule deal, the commission therefor is not due, for the reason that said transaction has not been fully closed, and deed and abstract delivered therefor, as in the contract labelled Exhibit 'A,' attached to plaintiff's first amendment to petition.   By way of answer to plaintiff's claim for money advanced, defendant states that it never authorized the plaintiff to make any of the charges mentioned therein and never knew or heard of a claim for money advanced on behalf of the defendant as alleged by plaintiff in his said amendment."

The cause was tried to a jury, and a verdict returned for the plaintiff for $1,807.63.   Judgment being entered upon the verdict, defendant appeals.

The manner in which this case is presented calls upon us again to emphasize the importance of Rule 53 of the Rules of this court, which provides as follows:

1. APPEAL AND ERROR: assignment of error: sufficiency.

"Sec. 53. The brief of appellant shall contain a short and clear statement disclosing:

"First. The nature of the action.

"Second. What the issues were.

"Third. How the issues were decided, and what the judgment or decree was.

"Fourth. A brief and concise statement of so much of the facts as fully presents the errors and exceptions relied upon, referring to the pages and lines of the abstract.

"Fifth. The errors relied upon for a reversal.

"Following this the brief shall contain, under a separate heading of each error relied on, separately numbered propositions or points, stated concisely, and without argument or elaboration, together with the authorities relied on in support of them."

Counsel, in presenting his opening argument, fails to observe the rule in any of its requirements. Under the heading of facts, an apology is made for not setting out the facts as required by the rule, and the apology is that it is difficult to do so. Thereupon, counsel makes a brief statement of the allegations of the pleadings, sets out the manner in which the court construed the pleadings, sets out the substance of the instructions upon this point, and, while not conceding the correctness of the instructions, tells us that it is the law of the case, and the jury should have followed it.

Counsel thereupon, under the heading, "Errors Relied upon for a Reversal," submits the following:

"(1) The court erred in matters pertaining to the claim for commission on account of the Maule transaction in the following particulars: (a) The court erred in overruling defendant's motion, made at the close of the evidence, to withdraw from the consideration of the jury the claim for commission made by the plaintiff on account of the first Maule

transaction.  (b) The court made the same error as to the second Maule transaction.  (c) The court erred in giving Instructions 9, 10, 11, in so far as they pertain to the Maule transaction.  (d) The court erred in refusing to grant a new trial on account of the various errors in connection with the Maule transaction, as shown in the motion for a new trial. (e) The court erred in failing to deduct the sum of $1,500 from the verdict on account of error in the Maule transactions.

"(2)   The court erred in the admission of evidence, and in refusing to strike the same from the record, especially with reference to the witness Roche in permitting him to state the position and authority of certain parties claimed to be connected with the defendant, and in detailing conversations with them.

"(3)   The court erred in admitting certain evidence as to statements claimed to have been made by various employees or agents of the defendant.

"(4)   The court erred in the admission of certain exhibits known as H, I, and AA and P, as the same appear in the abstract.

"(5)   The court erred in giving Instruction 2.

"(6)   The court erred in overruling the defendant's motion for a new trial, and in refusing to reduce the verdict."

Reference is made to the pages and lines of the abstract where it is claimed that these errors exist.  Nowhere is there a brief of points; nor is it stated, in any place, of what the errors consist of which complaint is made.  Thereupon, under the heading "Presentation," counsel says:

"The errors are numerous, and we shall attempt to classify them, presenting as many together as possible in order to limit the argument," and says, "We do not set out a separate and distinct brief of the law or points for the reason that the application of the authorities bearing upon the proposition involved, will be best seen by referring to them in the course of our argument."

This manner of presenting a case to this court is a clear

violation of Rule 53, and would justify this court in disregarding any of the errors so argued. As said in *Cooper v. Oelwein,* 145 Iowa 183:

"Assignments of errors as such are no longer essential to a review of the rulings of the district court, . . . but this court is entitled to know the errors relied on for reversal, and this much is exacted by Rule 54."

To this, we might further add that opposing counsel are entitled to know the errors relied on for reversal, and these ought to be plainly and clearly stated, that the controversy may be narrowed to its legitimate limits. As said in the *Cooper* case, *supra:*

"The record will no more be searched to ascertain the rulings hinted at, but not stated, than formerly; but, to entitle the appellant to a hearing thereon, the particular ruling complained of must be indicated, and where to be found in the record pointed out" (citing authorities).

Much has been added to our labor by the manner of this presentation. Some of the alleged errors we do not consider, because of the manner of their presentation.

However, we find in the argument sufficient to justify us in considering the record made, touching the second count of plaintiff's petition involving the Maule transactions. This involves the sufficiency of the evidence to justify the submission to the jury of these transactions, as a basis for recovery against the defendant, and involves also the instructions of the court in which these claims were submitted to the jury.

2. BROKERS: action for commission: pleading: variance.

We consider only the first and second of the Maule deals, for the reason that the plaintiff withdrew any claim for commission on the third Maule deal, in which he claimed commission in the sum of $437.50. The court, in its instructions to the jury touching these Maule deals, said:

"9. The next claim of the plaintiff is for commission on the sale of land to Edward Maule, first and second deal. The plaintiff having withdrawn his claim for commissions on the

third Maule deal, the same being in the amount of $437.50, you will, therefore, not consider this claim in this case. He bases his claim for commission on these deals on the written contract offered in evidence and which is admitted by both the plaintiff and defendant as being the contract in existence between them at the time of this transaction. Your attention is called to Pars. 7 and 8 of the contract which set forth the terms and conditions under which commissions were to be paid to the plaintiff, and to Par. 6, which sets forth the rate of commission. Now, you are instructed that the burden of proof is upon the plaintiff to establish his cause of action upon these claims, and if he has failed to do so upon any or all of them, then he would not be entitled to recover upon such as he has failed to establish his right to recover upon. In order to entitle him to commission on these deals, it is incumbent upon him to show you by a preponderance of the evidence that he procured these parties to become purchasers of the land of the defendant and he would be entitled to his commission when one-half of the purchase price is paid in cash, and if the purchaser only paid one-third down then plaintiff would only be entitled to one-half of his commission in cash and the other one-half in paper secured by the land, and in case the payment should be greater than one-third and less than one-half, then the cash and the paper representing the plaintiff's commission should be paid in proportion, or he would be entitled to all of his commission when the sale was fully closed and the deed and abstract delivered and accepted, regardless of how the land might be paid for or settled for between the defendant and the parties purchasing the land. You will, therefore, consider these transactions in the light of this instruction and determine what, if any, commission was due him upon these transactions or any of them.

"10. Now, the defendant claims that it is not liable to the plaintiff for commission upon the first Maule deal for the reason that it claims that said deal was never consumated or closed up, and before the plaintiff can recover thereon he

must show you by a preponderance of the evidence that either one-half of the purchase price was paid in cash, or that the sale was fully closed and that the deed and abstract was delivered and accepted, or that a contract of sale was made and entered into between the defendant and the said Maule for the first 40 acres and that the same was not carried out on account of the fault or negligence of the defendant or through some other arrangements between the defendant and the said Maule to which the plaintiff was not a party and to which he did not help to bring about himself and thereby waive his commission.

"11. The defendant claims that it is not liable on the second Maule deal for the reason that it did not own the land bargained for in the second Maule deal and that the same belonged to one J. M. Parkhill, and that any transaction in reference to the same was had with the said Parkhill and not with this defendant and that the defendant was therefore not interested in the same. The plaintiff claims that Parkhill as the agent of the company agreed to pay him the regular commission for the second Maule deal. Now, you are instructed that it is incumbent upon the plaintiff to show you that he procured a purchaser for the second Maule deal for the defendant; that one-half of the purchase price was paid in cash or that the deal was consummated and the deed and abstract delivered and accepted, or that there was a binding contract of sale made between the said Maule and the said defendant for said land and that the same was not carried out by reason of the fault or negligence of the defendant or on account of some other arrangement or agreement between the defendant and the said Maule to which the plaintiff was not a party and that it was not due to any fault or neglect on his part and that he did not consent to waive his commission. You are further instructed that if the plaintiff has shown you that Mr. Parkhill agreed with the plaintiff that the company would pay plaintiff his commission if the exchange with Mr. Maule of the second piece of land in the

Maule deal went through for the first piece, and said deal did go through, then the company would be liable and you should so find; but if the land in the second deal belonged to Parkhill and this was Parkhill's individual deal, then the plaintiff could not recover upon the second Maule deal in this case and you should so find, unless Parkhill agreed for defendant to pay the commission.''

The record touching the first and second Maule deals disclosed: That in April, 1912, the plaintiff, in company with Mr. Parkhill and others, including Mr. Maule, inspected a 40-acre tract of land, and, after being inspected, the same was purchased by Maule for $6,000. A written contract was drawn up. Maule paid $500 down to bind the bargain. This was the first Maule deal. Afterwards, Maule became apparently dissatisfied with his purchase, and Parkhill agreed to let him have a piece of land, which Parkhill claimed to own, in lieu of the one purchased, and an agreement was entered into for an exchange. This was the second Maule deal for which commission is claimed. The plaintiff testifies:

''I closed up the exchange as agreed upon between Mr. Maule and Mr. Parkhill; drew up the contract, embodied the statements of each of the people as agreed upon, and Mr. and Mrs. Maule signed them in my office. I sent the papers to Parkhill for his signature, and he returned them to me.''

The contract of exchange, so far as material, provides that Parkhill sells and agrees to convey to Maule a certain parcel of land, containing 40 acres, at $150 an acre; that, in consideration of this agreement, Maule agrees to sell and convey to Parkhill a certain 40 acres, being the 40 involved in the first Maule deal.

''It is further agreed by the parties herein concerned that in the exchange of these properties, each is to assume the obligations which rest on each property taken.''

Parkhill agreed to assume the $5,500 on the land purchased by Ed Maule from the defendant, and to credit Maule with $500 which he paid on the land. Maule agreed to settle

for the land exchanged to him by Parkhill in the following manner: The $500 which has been paid on the land exchanged to Parkhill being credited to him as a payment on this land taken in exchange, to assume two vendor's lien notes, $1,000 each, the balance, $3,500, to be paid in three equal installments. This contract of exchange was delivered to Maule.

Touching these two transactions, Maule testified, and his testimony on this point is not disputed, that he entered into a written contract for the first 40 acres purchased from the company. He was to pay $500 cash, $1,500, January 1, 1913, and $4,000, divided into three equal payments; and he says that, at the time that he entered into the contract, he was willing to carry it out; that on his way back from Texas he had a conversation with Parkhill about the location of this land, and he objected to it because it was not near a schoolhouse and not on a main road; that Parkhill then offered to trade him some land that he owned that was just as good; that he told Parkhill that he would think it over, and if it was just as good he would make the exchange; that Parkhill told Roche to look after the transaction for him; that he talked the matter over with Roche; that Roche said it was a good exchange—a better location for school and railroad—and Roche advised him to make the exchange; that he afterwards talked it over with Parkhill and decided to make the exchange; that Parkhill said that whatever Roche did in the way of drawing up the contract and completing the deal would be satisfactory; that a contract was afterwards drawn up for the exchange; that the exchange was never made because he (Maule) did not think that the land was as represented after he had inspected it; that the Parkhill land was a very undesirable piece of land; that he notified Parkhill that he would not accept it; that he rejected the land, and no deed or abstract was ever delivered; that afterwards he looked over another piece of land and purchased it from the company; that he was given credit for the $2,500, being the amount that he had paid on the other land; that Roche wrote him to make

the exchange; that he wrote him to take the 20 acres and not to take Parkhill's notes; that all the money that he ever paid to defendant company was credited on the last 20 acres purchased. This was the third Maule deal. He never had any correspondence with the Star Land Company, and never advised them that he had purchased this land from Parkhill, or had exchanged the 40 acres which he agreed to take from them for Parkhill's 40 acres. None of the notes given Parkhill were ever paid, and were all returned to Maule and were in his possession at the time of the trial.

Plaintiff testified that Maule did not say anything about the fact that the land purchased in the first Maule deal was too far from a school, at the time that he selected it; that, when they passed along by the Parkhill tract, Parkhill offered to trade it to Maule for the 40 purchased from the company; that Mr. Maule finally bought 20 acres from the Star Land Company, and that is all he ever got a deed for, and he paid $3,500 for it. This is the third Maule transaction.

It is apparent that the plaintiff advised all these exchanges, involving the second and third Maule deals, and it is apparent that the only deal that was closed between the plaintiff and the defendant was that involved in what is known as the third Maule deal. Any claim for commission based upon this deal was dismissed by the plaintiff.

The jury were told in the instructions that the plaintiff relied upon the written contract introduced in evidence, to recover his commission on the Maule deals, and this was the basis of plaintiff's claim to recover, as alleged in his petition. He did not claim to recover upon any oral contract made between him and Parkhill, and, therefore, any such agreement made between them was irrelevant to any issue tendered, even though it be conceded that Parkhill had power to make such a contract—a fact that this record, however, does not disclose.

Plaintiff sued upon the written contract to recover commission, and must show that he has performed the conditions of his contract before he is entitled to recover commission.

He consented to all the exchanges that were made after Maule's first purchase, and could not, under any theory of his contract, recover commission from the defendant for these sales, unless it should be upon statements made by Parkhill that he would be allowed his commission anyway, whether the contract was performed or not.

We think that the court erred in allowing the jury to consider this agreement with Parkhill as a basis for recovering commission on the part of the plaintiff. Without this agreement as a basis for recovery, the plaintiff had no standing in the court. He could not sue on a written contract and recover on an oral. It was never claimed that one third was paid in cash, in which event he should be entitled to one half cash and one half in paper.

The eighth paragraph of the contract reads:

"All commissions due and collectible when sale is fully closed and deed and abstract have been delivered and accepted."

In none of these transactions with Maule, except the last, was the deal fully closed and deed and abstract delivered, and this last was dismissed by the plaintiff. Under what theory of the evidence the jury could have been permitted to find for the plaintiff on any of these Maule deals is not disclosed by this record, except the claim made in the evidence and not in the pleadings, that Parkhill said, at the time of the exchange of the first Maule deal for the second Maule deal, that plaintiff should receive his commission on the first Maule deal. This agreement was not pleaded or relied upon by the plaintiff, was not brought to the knowledge of the defendant, and no authority was shown in Parkhill to make such an agreement to bind the defendant.

For the errors pointed out, the case is—*Reversed.*

EVANS, C. J., LADD and SALINGER, JJ., concur.