JAMES M. NORFLEET, ADMINISTRATOR, v. PAMLICO INSURANCE
AND BANKING COMPANY.

(Filed 3 October, 1912.)

**1. Partnership Obligations—Joint and Several.**

An obligation of a partnership to its creditors is joint and several, and is the undertaking or promise of each of its members.

**2. Same—Notes—Contracts—Interpretation—Agreement as to Collateral—Insurance, Life—Notes—Accounts—Application of Proceeds of Security.**

The proceeds of a policy of life insurance which had been hypothecated by the deceased at a bank, as collateral for a note for borrowed money, with the further agreement "that any excess of collateral upon this note shall be applicable to such other note or claim" held by the bank against the borrower, etc., is by the terms of the contract, expressed or implied, applicable to the payment of insurance premiums collected by a firm of which the deceased had been a member, as agents for the bank, and which had not been paid over to it; and to the payment of a note made to the cashier of a bank for its use and benefit and being for money loaned by the bank to the deceased. *Bank v. Scott,* 123 N. C., 540, cited and applied.

**3. Suits—Notes—Beneficial Owner—Parties.**

An action may now be sustained by the beneficial owner of a note made to another for his use and benefit.

APPEAL by plaintiff from *Carter, J.,* at June Term, 1912, of EDGECOMBE.

This case was submitted upon a case agreed, the material facts of which are as follows: On 5 March, 1905, Leon A. Williams executed a note to the defendant for $3,000, payable on demand, and in the body of the same he agreed that the proceeds of certain policies of insurance on his life, payable to his estate, which he had deposited with defendant, as collateral, to secure his said note, should be applied to the payment of the note, and any surplus should be held by the defendant upon the following terms and conditions, which we copy from the note: "If I shall come under any other liability, or enter into any other agreement with said bank, while it is the holder of this obligation, it

is hereby agreed and understood that any excess of collaterals
upon this note shall be applicable to such other note or claim
held by the said Pamlico Insurance and Banking Company
against said Leon A. Williams, and in case of any exchange of
the collaterals above named, the provisions of this note shall
extend to such new collaterals."

Leon A. Williams, on 16 November, 1909, executed to one
Job Cobb, in his own name, though as cashier of defendant
bank and for it, his note for $44.64, the consideration being a
debt which he owed the bank. The original debt of $3,000 has
been paid, except the sum of $181.50, for which a renewal note
was given by Williams, which is now due and unpaid. On
1 October, 1909, the firm of Williams, Weddell & Co., of which
Leon A. Williams was a member, had been engaged in the in-
surance business as agents of defendant, and on said date were
indebted to defendant, as its agents, in the sum of $828.30, for
premiums collected and not paid to defendant. This debt is
now due, no part thereof having been paid. The firm is insol-
vent. Leon A. Williams died insolvent on 24 October, 1911,
and plaintiff is his administrator. Defendant, after demand,
made a statement to plaintiff of its administration of the said
collaterals, showing the total proceeds of the policies in its
hands to be $1,985, and it was thereupon agreed that defendant
should retain so much of the said proceeds as is legally appli-
cable to its claims, the same to be determined by the court under
the submission, and pay the balance to the plaintiff. It was
admitted, as part of the facts, that defendant, by its cashier,
demanded of Leon A. Williams, 1 October, 1909, the payment
of the open account due by Williams, Weddell & Co., to which
Williams replied: "You have, to secure it, everything I possess
now, and I can do nothing for you." The balance due on the
original debt ($181.50) is not in controversy. The court held,
upon the admitted facts, that defendant had a lien on the pro-
ceeds of the policies, under its contract with Leon A. Williams,
for the debts of $44.64 and $828.30, and adjudged that said
amounts and the costs be retained by defendant out of said pro-
ceeds, and the balance paid to plaintiff, who appealed from the
judgment.

*James M. Norfleet for plaintiff.*

*G. M. T. Fountain & Son and Marshall C. Staton for defendant.*

WALKER, J., after stating the case: ·The plaintiff contends that as the liability of Leon A. Williams for the open account is not of the same kind as that upon his note for which the policies were deposited as collateral, the former is not within the terms of the contract, one being an individual and the other a firm. But we are unable to accept this view, as we think the words of the contract are sufficiently broad and comprehensive to embrace an express, and if not expressed, then an implied promise to pay the bank the amount of the premiums collected by his firm as insurance agents for it. Partners are liable on their obligations to creditors jointly and severally. It is the undertaking or promise of the partnership, as well as of each of its members. But apart from this, the debt for premiums collected by the firm and not paid over, is within the very terms of the agreement as to the collaterals.

This case is so much like that of *Hallowell v. Bank,* 154 Mass., 359 (*s. c.,* 13 L. R. Anno., O. S., p. 315), and the reasoning of the Court in that case so strongly commends itself to us, that we might content ourselves with a bare reference to it, were it not for the zeal and confidence with which the contrary view was urged upon us. The clause of the collateral note construed in that case was as follows: "On the nonperformance of this promise (a demand note for $25,000), said bank applying the net proceeds (of the collaterals, being shares of stock) to the payment of this note and accounting to me for the surplus, if any; and it is hereby agreed that such surplus, or any excess of collaterals upon this note, shall be applicable to any other note or claim against me held by said bank." After disposing of a preliminary question, as to whether the surplus proceeds of the collaterals were applicable to the payment of a firm debt until there was a final default in the payment of the original note, the Court says: "The question remains whether the bank is entitled to hold security for the bills, which were accepted by Smith's firm and not by him individually. It cannot be denied

that the acceptance were 'claims against him,' and that the words used in his note were broad enough to embrace firm acceptances unless there is some reason in the contract, the circumstances, or mercantile practice, to give them a narrower meaning. *Singer Co. v. Allen,* 122 Mass., '467; *Chuck v. Freen,* Mood and M., 259. The clause pledging the property for any other claim against the debtor is not inserted with a view to certain specific debts, but as a drag-net to make sure that whatever comes to the creditor's hands shall be held by the latter until its claims are satisfied. Corey on Accounts and Lindley on Partnership have made it popular to refer to a mercantile distinction between the firm and its members. But we have no doubt that our merchants are perfectly aware that claims against their firms are claims against them, and when a merchant gives security for any claim against him, and there is nothing to cut down the literal meaning of the words, he must be taken to include claims against him as partner."

This principle is affirmed in 22 Am. and Eng. Enc. of Law (2 Ed.), p. 871; 31 Cyc., 821 (c) and 822 (c) and notes, where the cases are collected. While such an agreement will be construed so as to execute the intention of the parties and to give effect to every part thereof, yet it will be construed strictly, so as not to extend the obligation beyond the meaning contemplated. This is not unlike contracts generally, which must be so interpreted as to ascertain from the context what the parties intended, so as to enforce the undertaking according to their understanding of it.

The language of the contract in this case is exceedingly broad, and the contract is sufficient to include, according to its terms and by its very words, "any other liability" or obligation arising out of "any other agreement of Leon A. Williams with the bank," and also "any other note or claim." We can hardly think of any more certain language that could have been employed by the parties to embrace this particular kind of obligation, if they had in mind, and intended at the time, to secure it by the deposit of the collaterals. It was not intended to confine the securities merely to a liability in the form of a note, but to any kind of liability evidenced by note or created by

agreement, or in the shape of a claim, and the language was broadened by the use of the words "liability," "agreement," and "claim," in order to extend the operation of the contract to almost every conceivable obligation.

*Chief Justice Marshall,* in *Barry v. Foyles,* 26 U. S. (1, Peters), 311, said: "This suit is brought on a partnership transaction, against one of the partners. The declaration states a contract with the partner who is sued, and gives no notice that it was made by him with another. Will evidence of a joint *assumpsit* support such a declaration? Although it has been held from the 36 H. 6 Ch., 38, that a suit against one of several joint obligors might be sustained, unless the matter was pleaded in abatement, yet with respect to joint contracts, either in writing or by parol, a different rule was formerly adopted, upon the ground of a supposed variance between the contract laid and that which was proved. This distinction was overruled by *Lord Mansfield* in the case of *Rice v. Shute,* 5 Burn, 2611. The same point was afterwards adjudged in *Abbott v. Smith,* 2 W. Black, 695, and has been ever since invariably maintained. The principle is, that a contract made by copartners is several as well as joint, and the *assumpsit* is made by all and by each. It is obligatory on all, and on each of the partners." It was accordingly held that evidence of a joint *assumpsit* may be given, at common law, to support a declaration against one of the partners upon his several liability.

We are of the opinion that the defendant is entitled to retain a sufficient amount from the proceeds of the collaterals to pay the firm debt, and we entertain the same view in regard to the note of $44.64, given by Leon A. Williams to Job Cobb for the bank, Cobb being at the time its cashier. Under the old procedure, suit upon this note would have been in the name of Job Cobb to the use of the bank, as he is the holder of the legal title; but now it would be brought in the name of the bank, the beneficial owner of the note. It can make no difference that the note is payable to Job Cobb, when it is admitted to be the property of the bank and to have been given for a debt due to it, the amount of the note having been credited to Williams on the books of the bank at the time it was given.

We have not brought to our aid, in construing the contract, the interpretation which Leon A. Williams himself put upon it, when, in reply to a demand from the bank for payment of the firm indebtedness, he said: "You have, to secure it, everything I possess, and I can do nothing further for you." It was not necessary that we should lay any stress upon his own construction of his agreement with the bank, as his intention is clearly manifested to us without this additional light.

We have carefully examined the authorities cited by the plaintiff's counsel, and do not think they apply to this case, or that they should influence our decision in any degree. They are cases in which it was attempted to divert the proceeds of collaterals deposited to secure a specific debt to the discharge of some other obligation of the pledgor not mentioned in the agreement of the parties, or to his general indebtedness. The case of *Bank v. Scott,* 123 N. C., 540, was of this kind, and the Court held that the collaterals could not be applied to the payment of debts with which the pledgors were not connected, but should be used only in discharge of the debts, specified in the collateral agreement, upon which they were liable as principals, indorsers, or sureties. The two cases are not exactly alike in their facts, but the principle upon which *Bank v. Scott* was decided is applicable to the case at bar, and sustains our view of the law.

Our opinion, on the whole case, being with the defendant, we affirm the judgment entered by the court upon the case agreed.

Affirmed.