THOMAS F. ROCHE, Appellant, v. AMERICAN SURETY COMPANY, Appellee.

GARNISHMENT: Delivery Bond—Defense to Action On. In an action on a delivery bond given for the release of money held under

garnishment, it is a complete defense that the money so held did not belong to the defendant in attachment. Evidence held to establish the defense.

**JUDGMENT:** Parties Bound—Payment of Attorney Fees. One who is not a party to an action and neither exercises nor attempts to exercise control thereover is not bound by the judgment rendered because of the fact that, prior to the opening of the trial, he guaranteed the payment of counsel fees for trying the cause.

*Appeal from Johnson District Court.*—R. G. POPHAM, Judge.

SEPTEMBER 27, 1921.

REHEARING DENIED MAY 15, 1922.

ACTION against the surety upon a delivery bond. Verdict and judgment for the plaintiff by direction of the court. The material facts are stated in the opinion.—*Affirmed.*

*Remley & Russell* and *W. J. Baldwin,* for appellant.

*Messer, Clearman & Olsen,* for appellee.

ARTHUR, J.—I. This is an action against the American Surety Company as surety upon a delivery bond. The bond was given to release a sum of money held under attachment in an

1. GARNISHMENT: delivery bond: defense to action on.

action brought in the district court of Johnson County in 1912 by Thomas F. Roche, who is also the plaintiff in this action, against the Star Land Company (a corporation located at Des Moines, Iowa, and having an office at Kansas City), to recover $2,583.05, which plaintiff alleged was due him as commissions for the sale of real estate, under a written contract of agency with the Star Land Company. A writ of attachment was issued and served by garnishing W. J. McDonald, an attorney at Iowa City, individually, as a supposed debtor of the Star Land Company. A trial of the main action followed, resulting in a verdict for the plaintiff, which, upon appeal to this court, was reversed. *Roche v. Star Land Company,* 176 Iowa 34. Upon a retrial, plaintiff was again successful, recovering a judgment for $1,724.84, with

costs amounting to $402.30. Upon motion of plaintiff, judgment was entered against the surety on the delivery bond for the amount of the judgment obtained by plaintiff against the Star Land Company. The judgment against the surety company, in an action brought by it for that purpose, was later canceled and set aside. Thereupon, Thomas F. Roche, appellant herein, commenced this action against the American Surety Company as surety upon the delivery bond.

At the conclusion of all the testimony, the court directed the jury to return a verdict in favor of the defendant. A verdict was returned accordingly, and judgment entered against the plaintiff for costs.

The petition of plaintiff in the original action against the Star Land Company was later amended by plaintiff in several material respects. The amended petition contained three counts, whereas the original petition contained but one. In Count 1, plaintiff alleged that the Star Land Company was indebted to him for commissions earned under a verbal contract therewith, entered into on or about September 15, 1911, in the sum of $837. In Count 2, he sought to recover for commissions earned under the written contract of agency entered into February 1, 1912, and in Count 3, for expenses incurred on behalf of the Star Land Company, in the sum of $125.50. It was further alleged in the amendment to the petition that the defendant was entitled to credits upon the several items referred to therein in the sum of $3,053.70, and judgment was asked for $3,018.80, instead of $2,583.05, the amount demanded in the original petition. Two subsequent amendments, amplifying the allegations of the amendment here referred to, were filed. They did not, however, change the causes of action set up in the amendment. The defenses pleaded by the American Surety Company in the case at bar are: First, that the judgment entered in favor of plaintiff and against the Star Land Company, December 9, 1916, is void because entered in vacation; second, that W. J. McDonald, garnishee, was not, at the time notice of garnishment was served upon him, the debtor of the Star Land Company, but that the money in his possession, which plaintiff sought to tie up, was held by him as attorney for Frank G. and Charles

C. Myers, who had purchased some Texas land of the Star Land Company under a written contract, the material terms of which will be referred to later; third, that the funds garnished, in the hands of W. J. McDonald, did not, at the time of the service of the notice of attachment, belong to the Star Land Company; and fourth, that, by reason of the several amendments setting up new and different causes of action filed by plaintiff to the petition in the original action to recover commissions, he waived and abandoned the attachment, and thereby estopped himself from maintaining this action against the surety upon the delivery bond. Counsel for appellant moved the court to strike the defendant's plea of abandonment and estoppel from the answer, upon the ground that same did not constitute a defense. The motion was overruled. Whereupon the plaintiff, appellant herein, by way of reply, set up that the Star Land Company abandoned the defense of the original action commenced by Thomas F. Roche to recover commissions, in which it set up a counterclaim for damages on account of the alleged wrongful and malicious suing out of the attachment; and that F. F. Messer, one of the attorneys for the Star Land Company in the first trial and in the appeal to the Supreme Court, was employed and paid by the Southern Surety Company to present the defense of the Star Land Company upon the second trial of the case; and that said defense was made by the Southern and American Sureties for themselves and for their own benefit, and not for and on behalf of the Star Land Company; that such was concealed from plaintiff, who did not know thereof; that it was the duty of appellee to present all defenses it had in said action; and that, having failed to do so, it is bound absolutely by the judgment entered, and estopped from now making defense to the action on the delivery bond. Upon motion of counsel for defendant, this plea was stricken from the reply. Later, however, an amendment thereto, setting up substantially the same matters, was filed. This amendment was not challenged by defendant.

The errors assigned by counsel for appellant, and relied upon for reversal, are, in substance: That the court erred in overruling his motion to strike from the answer the defendant's

plea of abandonment of the attachment and estoppel; in striking plaintiff's plea of estoppel from his reply; in admitting certain documentary evidence offered by defendant; and in excluding certain other documentary evidence offered by plaintiff, upon the grounds that same were privileged communications by Messer, attorney for the Star Land Company, or his cocounsel; also in refusing to withdraw certain defenses tendered by the American Surety Company from the consideration of the jury; and finally, in directing a verdict for the defendant.

In view of the state of the record before us, which includes all documentary evidence admitted over the objection of counsel for plaintiff, and also that excluded by the court upon the objection of counsel for defendant, we are enabled to review the ruling of the court upon defendant's motion for a directed verdict, the same as though all of the testimony offered by plaintiff had been received in evidence.

The one vital and controlling question upon this appeal, as we view it, is: Was the fund garnished in the hands of W. J. McDonald, attorney for the Myers brothers, the property of the Star Land Company? The material facts bearing upon this question, which are not disputed in the evidence, are, in substance, as follows: On September 29, 1911, Frank G. and Charles C. Myers, brothers, entered into a written contract with the Star Land Company for the purchase of a tract of land situated in Hidalgo County, Texas. The agreed purchase price of the land was $7,000, to be paid, $500 cash upon the execution of the contract, and the remainder in three payments, as follows: $3,000 March 1, 1912; $2,000 March 1, 1913; $1,500 March 1, 1914. Each of the deferred payments was evidenced by a promissory note, payable to the Star Land Company. Later, a controversy arose between the Star Land Company and Myers Brothers, which resulted in the employment by the latter of W. J. McDonald to represent them in the adjustment thereof, and to make settlement of the purchase of the Texas land. Myers Brothers, for the purpose of carrying out its contract, turned $3,602.50 over to McDonald, to be remitted to the Star Land Company at Kansas City, Missouri, as soon as a satisfactory settlement of the dispute between them was reached. Be-

fore the money was remitted, but, as we understand the record, after a settlement had been agreed upon, notice of garnishment was served upon McDonald, as a supposed debtor of the Land Company. After the execution of the delivery bond, which followed shortly, McDonald forwarded the money received from Myers Brothers to the Southwest National Bank of Commerce, at Kansas City, Missouri, with directions that same be applied upon the indebtedness represented by the two notes above referred to, and last maturing. The reason for sending the money to the bank at Kansas City was to insure the proper application thereof upon two vendor's lien notes of $972.80 and $1,459.20 respectively, which were liens upon the land, and to secure the release of these liens. The correspondence reveals that the Star Land Company desired Myers Brothers to assume the vendor's liens and to take up the notes by paying the difference between the amount thereof and the vendor's lien notes. Myers Brothers, however, preferred to pay the whole sum due, and obtain a release of the vendor's liens. An agreement between the Star Land Company and McDonald resulted in the making of this arrangement.

It appears without dispute in the evidence that the Star Land Company did not hold the vendor's liens, but that they were held by a bank in New Orleans as collateral security to a loan made by one John J. Conway. These notes were, however, upon request, forwarded by the New Orleans bank, together with appropriate releases executed by Conway, to the Kansas City bank, which forwarded the same to McDonald, to be turned over to Myers Brothers. The evidence is not quite so clear as to who was entitled to the balance due on the purchase price, which amounted approximately to $1,017.63. So far, however, as the record discloses any facts on this point, it is to the effect that the notes were not held by the Star Land Company. This is shown in part by a letter from one of its officers, in which it is stated that the notes, which had been turned over to some other person by the Land Company, had been located, and would be forwarded in a few days for payment. The notes, when received by McDonald, in fact bore the cancellation stamp of the Star Land Company.

From the foregoing statement, it is manifest that McDonald, who was garnished as an individual, and not in his representative capacity, was in no wise indebted to the Star Land Company, and that the funds in his hands were held by him solely in his capacity as attorney for Myers Brothers, for the purpose of paying the balance due on the purchase price of the Texas land and securing the release of the vendor's liens. This question aside, is it not equally manifest that the funds in the hands of the garnishee were not the property of the Star Land Company?

Section 3911 of the Code is as follows:.

"In an action brought upon such bond, it shall be a sufficient defense that the property for the delivery of which the bond was given did not, at the time of the levy, belong to the defendant against whom the attachment was issued, or was exempt from seizure under such attachment."

This section permits the surety, in an action against it upon a delivery bond, to, show as a complete defense that the property attached did not, at the time of the levy, belong to the defendant against whom the attachment was issued. If McDonald caused the vendor's lien notes to be paid, and obtained a release of the liens, payment must be made either to the holder or to the New Orleans bank, and not to the Star Land Company. If, on the other hand, the Texas land was conveyed to Myers Brothers, subject to the vendor's lien notes, $2,432 of the money held by McDonald belonged absolutely to his clients. The only possible question as to the ownership of any part of the money in the hands of the garnishee is as to that represented by the difference between the amount of the vendor's lien notes and the balance due on the purchase price of the land, which was approximately $1,000. The record as to the ownership of the two notes for $2,000 and $1,500 respectively is not very clear; but as the evidence upon this point is undisputed, a finding by the jury that it was the property of the Star Land Company could not stand. In what we have said thus far, we have given no consideration to the interest of Myers Brothers in the fund held by the garnishee for the protection of their rights under the adjustment of the controversy between them and the Star Land Company,

as affecting the susceptibility of the fund to garnishment. We conclude, however, upon this point that the undisputed evidence shows that the money garnished was not the property of the Land Company.

II.  It follows, from this conclusion, that the ruling of the court upon defendant's motion to direct a verdict in its favor must be sustained, unless appellee is bound by the judgment

2. JUDGMENT: parties bound: payment of attorney fees.

entered in the original action and estopped thereby, and by the other matters pleaded by plaintiff in his reply, to set up this defense. In discussing this question, we shall ignore the ruling of the court upon the motion to strike this plea from the original reply, and treat the amendment thereto the same as though it in fact embodied all of the allegations stricken from the reply.

One W. F. Zumbrunn, an attorney at Kansas City, Missouri, appeared with Frank F. Messer, an attorney at Iowa City, for the Star Land Company in the defense of the original action brought against it by Roche for commissions. After the judgment obtained upon the first trial was reversed by this court, and the case sent back for retrial, Messer refused to proceed with the second trial until a satisfactory arrangement was made by the Star Land Company for the payment of his fees. On November 14th, he advised Zumbrunn that the case was assigned for trial November 27th, and that it would be reached promptly on that date, and suggested that he make arrangement for the trial. No reply appears to have been received to this letter from Zumbrunn, but it is shown that Ethel King, his stenographer, replied to a second similar letter from Messer, bearing date November 20th, informing him that Mr. Zumbrunn was in Louisiana, and was expected back the following Thursday, which would be after the date set for trial. Messer obtained a short delay of the trial, and on November 29th forwarded two telegrams to the Southern Surety Company at St. Louis, stating, in effect, that, unless his fees were guaranteed by some responsible party, he would withdraw his appearance, and let the plaintiff take judgment. On December 1st, the Southern Surety Company wired Messer, guaranteeing payment of his fee for the trial of the case; whereupon the trial began on December 4th,

and was concluded on the 9th. No officer or representative of either the Southern Surety Company or the American Surety Company was present at the trial or participated therein. No other or further arrangement was made with Messer by either of the surety companies. Later, however, he became the attorney of the American Surety Company, for which he appeared in the action brought by it in equity, to set aside and cancel the judgment rendered against it upon motion of plaintiff's attorney, as previously stated. The conduct of the defense made by Messer and the other members of his firm was for the Star Land Company. Messer had been employed by the Land Company, and had not withdrawn as its attorney. The surety companies had no control thereover, or authority to direct the proceedings. Of course, they were, as Messer knew, interested in the result of the trial, as their liability depended upon whether or not a judgment was obtained by Roche against the Star Land Company. The American Surety Company was not a party of record, did not employ or pay Messer, and is not, by the mere act of the Southern Surety Company, with whom it had reinsured its liability upon the delivery bond, in guaranteeing the payment of attorney fees to insure a defense by the Star Land Company, estopped from setting up the defenses above discussed. The authorities relied upon by counsel for appellant do not go to the extent of holding that one not a party to the record, who guarantees the payment of attorney fees for the defendant, and who assumes and has no control of the proceedings and does not direct the same, is bound by the judgment entered, as will appear from a careful reading thereof. *McNamee v. Moreland*, 26 Iowa 96; *Stoddard v. Thompson*, 31 Iowa 80; *Conger v. Chilcote*, 42 Iowa 18; *Marsh v. Smith*, 73 Iowa 295; *Montgomery v. Alden*, 133 Iowa 675. Indeed, *McConnell v. Poor*, 113 Iowa 133, and *Goodnow v. Litchfield*, 63 Iowa 275, lend support to the contrary view.

In our opinion, the evidence offered by the plaintiff, as well as the record as a whole, fails to establish his plea of estoppel. He was not, therefore, prejudiced by any of the rulings complained of. This conclusion having been reached, none of the remaining questions discussed by counsel require consideration.

It follows, therefore, that the judgment of the court below must be and is—*Affirmed.*

Evans, C. J., Stevens and Faville, JJ., concur.