ROBERT L. LEACH, Receiver, Appellant, v. FIRST NATIONAL BANK OF FORT DODGE, Appellee.

266

FEBRUARY 7, 1928.

REHEARING DENIED JUNE 26, 1928.

*John Fletcher*, Attorney-general, and *Price & Burnquist*, for appellant.

*Kelleher & Mitchell*, for appellee.

WAGNER, J.—The defendant bank and the First Trust & Savings Bank are conjunctively operated in the same banking house,—the stock of the latter bank being owned by the former institution. The plaintiff is the receiver of the Webster County Trust & Savings Bank. On January 20, 1925, the last day that said bank was open for business, it borrowed from the First National Bank the sum of $8,000, and executed for said obligation its promissory note, and concurrently therewith executed what is denominated "General Guarantee and Deposit of Se-

curity as a basis of credit," which latter written instrument is as follows:

· "Know All Men By These Presents, that the undersigned in consideration of financial accommodations given, or to be given, or continued to the undersigned, by the First National Bank and or the First Trust & Savings Bank, of Fort Dodge, Iowa, hereby agree with either or both of the said banks, that whenever the undersigned *shall become or remain, directly or contingently, indebted to either or both of said banks for money loans,* or for money paid for the use or account of the undersigned, or for any overdraft or upon any indorsement, draft, guarantee, or *in any other manner whatsoever, or upon any other claim* either or both of the said banks shall then and thereafter have the following rights in addition to those created by the circumstances from which such indebtedness may arise, against the undersigned, or his, or their executors, administrators or assigns namely:

"1. All securities deposited by the undersigned with either or both of said banks as collateral to any such loan or indebtedness of the undersigned to either or both of said banks shall also be held by either or both of said banks as security *for any other liability of the undersigned to either or both of said banks, whether then existing or thereafter contracted;* and either or both of said banks shall also have a lien upon any balance of the deposit account of the undersigned with either or both of said banks existing from time to time, and upon all property of the undersigned of every description left with either or both of said banks for safe-keeping or otherwise or coming to the hands of either or both of said banks in any way, as security for any liability of the undersigned to either or both of said banks now existing or hereafter contracted.

"2. And the undersigned hereby gives said First National Bank and or the said First Trust & Savings Bank, or either or both of their assigns, full power and authority to sell, and at such sale to bid for and purchase said collateral security, or any part thereof, or any other security which may from time to time be substituted therefor, or any portion thereof, at public or private sale, without advertising the same, or otherwise giving notice on the maturity of this note, or at any time thereafter; or before, in the event of said securities depreciating in value,

at public or private sale, at the discretion of either or both of said banks, without advertising the same, or giving any notice, and to apply so much of the proceeds thereof, less all expenses, toward the payment of this note, with interest thereon; or at discretion to collect or otherwise convert said securities or either or any part of them and apply the proceeds toward such payment; and in case the proceeds thereof shall not cover the principal, with interest and the expenses incurred, the undersigned promises to pay the deficiency forthwith upon demand.

"It is further agreed that these presents constitute a continuing agreement, *applying to any and all future as well as to existing transactions between the undersigned and either or both of said banks.*

"Webster County Trust & Savings Bank, Fort Dodge, Iowa.

"By J. L. Hanrahan, Cashier."

At the time of the execution of the note and "guaranty," or collateral agreement, by the Webster County Trust & Savings Bank, it delivered as collateral security a number of promissory notes, which have been collected by the defendant bank. After the amount due on the $8,000 note is deducted from the collections on the collateral notes, there is a surplus of $6,500 and for the recovery of said sum the plaintiff receiver has instituted this action. There is no controversy over the $8,000 note, nor the fact that the defendant bank has withheld from the receipts on the collateral a sum sufficient to pay the same. It is the claim of the defendant that the Webster County Trust & Savings Bank is indebted to the First Trust & Savings Bank in the amount of $6,500, and that, within the meaning of the aforesaid collateral agreement, the collateral notes were pledged as security for indebtedness and liabilities to both the First National Bank and the First Trust & Savings Bank, and that they were entitled to hold and collect said pledged notes, and apply the proceeds to the payment of said indebtedness. At the time of the aforesaid transaction, there was on deposit in the Webster County Trust & Savings Bank, in the name of the First Trust & Savings Bank, as a depositor, the sum of $6,500. The plaintiff receiver denies that the Webster County Savings Bank was indebted to the First Trust & Savings Bank, claiming that said sum of $6,500 was money belonging to the Independent School District of Fort Dodge, and pleading *res adjudicata* as to said

matter, and also alleging that the cashier. who .executed the collateral agreement had. no authority to pledge the notes of the Webster County Trust & Savings Bank as security for the payment of the $6,500. The defendant bank claims estoppel and ratification by the Webster County Trust & Savings Bank of the act of the cashier in executing the collateral agreement.

The first question demanding our consideration is, Was the Webster County Trust & Savings Bank indebted to the First Trust & Savings Bank, and was there any liability on the part of the former bank for the payment of the $6,500 ? One Joe Nelson was the school treasurer of the Independent School District of Fort Dodge, and had been for some years. All of the money belonging to the school district was deposited by him, as treasurer, in the First Trust & Savings Bank. For many years, there had been a sort of gentlemen's agreement among the banks in the Fort Dodge Clearing House Association as to the distribution among the several banks, in proportion to their deposits, of public funds deposited in the depository bank selected by the school treasurer. The school treasurer had had nothing to do with this arrangement. His dealings were solely with the depository bank, the First Trust & Savings Bank. In accordance with this arrangement among the banks, the depository bank, by a check or draft, forwarded to the Webster County Trust & Savings Bank its proportionate share, which was received by said bank on deposit in the name of the First Trust & Savings Bank. Checks issued by the First Trust & Savings Bank upon said account were duly honored, and there were no withdrawals therefrom in any other way. In the receivership proceedings on February 19, 1925, it was decreed by the court that all claims against said bank arising out of the deposits, and all checking accounts, etc., as the same are shown on the books of the said bank, are allowed in the amounts and to the individuals as shown by the said books, said claims being allowed as claims of depositors of said bank, without further proof thereof. In August, 1926, the receiver filed his report and inventory, stating therein that it included a list of all the liabilities of said bank, as shown by the books on the 20th day of January, 1925; and listed therein as bank deposits is the sum of $6,500 in favor of the First Trust & Savings Bank; and the

court, by order entered of record, finds that said report and inventory shows a list of all the liabilities of said bank, as shown by its books at the date of closing, and is in all matters true and correct, the order stating that said report and inventory is audited and approved.

A depositor is one who delivers to or leaves with a bank money subject to his order. And one bank may lawfully become a depositor of another bank. *State ex rel. Carroll v. Corning State Sav. Bank,* 136 Iowa 79. The relationship of debtor and creditor arises between the bank and the depositor. *Hunt v. Hopley,* 120 Iowa 695; *Leach v. Beazley,* 201 Iowa 337, and cases therein cited.

Filed in the receivership proceedings there was a claim by the school district and its treasurer, asking for a preference as to the $6,500 on deposit in the insolvent bank. The receiver,  in his answer to the claim for preference, averred that the deposit of $6,500 referred to in the application is also claimed by the First Trust & Savings Bank, and asked that the owner of said deposit be determined. Upon the hearing as to said claim, the court denied the requested preference, finding that the treasurer of the Independent School District had on deposit in said bank, as funds belonging to the school district, a sum amounting to $476.55 in excess of the $6,500 involved in this litigation, and allowing the said claim as a depositor's claim. It is the claim of the plaintiff receiver that the defendant is bound by this adjudication.

That a judgment is conclusive upon the parties to the suit and all persons who are in privity with them needs no citation of authorities. But see *Gerber Co. v. Thompson,* 84 W. Va. 721 (7 A. L. R. 730, 100 S. E. 733). Neither the defendant bank nor the First Trust & Savings Bank was a party to the litigation in which a preference was asked,—neither of said banks was in any way impleaded in said proceedings.

Privity is said to be a mutual or successive relationship to the same rights of property, and if it is sought to bind one as privy by an adjudication against another with whom he is in privity, it must appear that, at the time he acquired the right, or succeeded to the title, it was then affected by the adjudication; for, if the right was acquired by him before the adjudication,

then the doctrine cannot apply. *Gerber Co. v. Thompson,* supra.

In some of our cases we have held that, although one be not a party to a suit, yet, if one sought to be bound had a direct interest in the subject-matter of the suit, knew of its pendency, and employs counsel to look after the matters involved therein, and assumes control and management of the litigation, and has a right to control and direct the same, he is, nevertheless, bound by the judgment. *McNamee v. Moreland,* 26 Iowa 96; *Stoddard v. Thompson,* 31 Iowa 80; *Conger v. Chilcote,* 42 Iowa 18; *Marsh v. Smith,* 73 Iowa 295; *Montgomery v. Alden,* 133 Iowa 675; *Bellows v. Litchfield,* 83 Iowa 36.

In the instant case, the claim for preference was prosecuted by the same attorneys who are now representing the defendant bank. Both Nelson, the treasurer, and the First Trust & Savings Bank requested that a claim for preference in the receivership proceedings be filed, and it was stipulated that the same should be without prejudice to any claim or defense, or rights or liabilities, as between the treasurer and the district, and as among the treasurer, the district, and the bank, and that the same was to be without expense to the district. And it was agreed that the district should join with the treasurer in the filing and presentation of claim for preference, and that, such act should not operate in any manner to waive or invalidate any claim of the district's against the bank, or against the treasurer, to account for the funds in the hands of the treasurer. Prior to the time for the filing of the claim for preference, the order hereinbefore mentioned had been entered, establishing the claim of the First Trust & Savings Bank as that of a depositor. Although the receiver, in his answer to the claim for preference, stated that the $6,500 was also claimed by the First Trust & Savings Bank, said bank was in no way impleaded in said cause of action. While said litigation was to be without expense to the district, it is not shown that it was to be without expense to the treasurer. It is not shown by the record that the attorney fee has been paid. The action of the district and the treasurer in filing the claim for preference was purely voluntary on their part, and they could have dismissed at any time. The bank did not, and could not, in any way control the actions of the district and its treasurer or the order and judgment of the court, and the same was *ex parte,* in so far as the bank is concerned.

272

We have recently held that one who is not a party to an action, and neither exercises nor attempts to exercise control thereover, is not bound by the judgment rendered because of the fact that, prior to the opening of the trial, he guaranteed the payment of counsel fees for trying the cause. *Roche v. American Sur. Co.*, 193 Iowa 965. Without further discussion, we hold that plaintiff's contention that the defendant is bound by the adjudication on the hearing as to the claim for preference is without merit.

Since the First Trust & Savings Bank was a depositor in the Webster County Trust & Savings Bank, and under said relationship the latter was the debtor of the former to the extent of $6,500, is said indebtedness such as comes within the purview of the "guaranty" or collateral agreement hereinbefore set out? It is to be noted that said guaranty or collateral agreement purports to have been executed between the Webster County Trust & Savings Bank and both the defendant bank and the First Trust & Savings Bank. It seems clear from the italicized portions of the contract (italics are ours) that the securities were pledged to either or both of said banks for any indebtedness directly or contingently arising for money loans, or in any other manner whatsoever, or upon any other claim which either or both of said banks might have as against the pledgor. A collateral security agreement, such as the one involved herein, is available for indebtedness other than that created at the time the security is deposited. The language is not restricted to the loan immediately made when the collateral security was given, but covers other liabilities or debts, and in favor of any person or bank designated or described therein. That such is the holding of the cases see *Mulert v. National Bank of Tarentum*, 127 C. C. A. 419 (210 Fed. 857); *Fourth Nat. Bank v. Stahlman*, 132 Tenn. 367 (178 S. W. 942, L. R. A. 1916A, 568); *Hallowell v. Blackstone Nat. Bank*, 154 Mass. 359 (28 N. E. 281, 13 L. R. A. 315); *Norfleet v. Pamlico Ins. & Bank. Co.*, 160 N. C. 327 (75 S. E. 937); *Commercial & Sav. Bank v. Jenks Lbr. Co.*, 194 Fed. 732; *Wilson v. Carothers* (Ky. App.), 43 S. W. 684; *Holston Nat. Bank v. Wood*, 125 Tenn. 6 (140 S. W. 31); *Union Brew. Co. v. Interstate Bank & Tr. Co.*, 240 Ill. 454 (88 N. E. 997); *Sheffer v. Griffiths*, 67

Utah 54 (245 Pac. 698); *Oleon v. Rosenbloom & Co.*, 247 Pa. St. 250 (93 Atl. 473); *Foster v. Abrahams*, 74 Cal. App. 521 (241 Pac. 274).

The words "any other liability," and the designation of the bank or person in whose favor such other liability may be asserted, authorize the retention of the collateral securities for debts other than the debt created when the security is given. *Foster v. Abrahams,* supra; *Mulert v. National Bank of Tarentum,* supra; *Oleon v. Rosenbloom,* supra; *Hallowell v. Blackstone Nat. Bank,* supra; *Fourth Nat. Bank v. Stahlman,* supra. In *Union Brew. Co. v. Interstate Bank & Tr. Co.,* supra, the court said:

"The terms of the contract under which the property is pledged may be such as to authorize it to be held for the satisfaction of other debts in existence at the time of the execution of the contract, and also for future advances. * * *"

In *Hallowell v. Blackstone Nat. Bank,* supra, it is said:

"The clause pledging the property for any other *claim against the debtor* is not inserted with a view to certain specific debts, but as a dragnet to make sure that whatever comes to the creditor's hands shall be held by the latter until *its claims* are satisfied."

We deem it unnecessary to quote from the other authorities hereinbefore cited.

The language of the collateral agreement hereinbefore quoted is plain and unambiguous, and we hold that, within the meaning of its terms, the securities deposited as collateral could rightfully be held for the payment of the $6,500 indebtedness upon the deposit of the First Trust & Savings Bank in the Webster County Trust & Savings Bank.

The next question for our consideration is as to whether or not Hanrahan, the cashier of the Webster County Trust & Savings Bank, had authority to pledge the notes as collateral for the antecedent debt owed by said bank to the First Trust & Savings Bank upon the deposit, or rather, whether the evidence as to said matter is conclusive, so as to warrant the court in directing a verdict for the defendant.

"Although every bank officer, including every director, is an agent, the acts of directors are regarded as corporate acts, while those of other officers are governed by the general rules of agency. They have authority to act in accordance with the general usage, practice, and course of their business, and when thus acting they bind their bank in favor of third persons who have no knowledge of any narrower limitation of their power. When they act beyond this sphere, they must ordinarily act by authority or resolution of the directors, or according to special usage or custom; and individuals who are doing business with them are bound to know at their peril to what extent unusual power has been confided to such officers or agents, and cannot hold the bank bound by unauthorized acts as to which the bank did nothing to hold out that the necessary authority existed." 7 Corpus Juris 526.

In *Smith v. Lawson*, 18 W. Va. 212 (41 Am. Rep. 688), it is said:

"* * * If the transfer by the cashier of a bank of one of its negotiable notes was proven to have been made to a third person in a transaction which was plainly out of the usual course of business, and the transaction on its face showed that the transferee must have known that the cashier was assuming a power and transacting business outside of his duties as cashier, and was transferring a negotiable note of the bank for a purpose for which he, as such cashier, had no right to transfer a negotiable note belonging to the bank, such transfer would be regarded as unauthorized, and the transferee could not be held to be a bona-fide holder, even though he did give a valuable consideration for the note."

In *Schneitman v. Noble*, 75 Iowa 120, it is said:

"In the absence of a more general authority, the cashier would be restricted in his power to bind his principal to the doing of such acts as are usually performed by persons who occupy the position he held. In other words, in the absence of proof of special authority, Gundrum [cashier] must be held to have had power to bind his employer only by acts done in the usual and ordinary course of business. Appellant was a depositor, and the notes were turned over in payment of the

deposit. We do not think that bank depositors are usually paid in that manner, and there is no showing that it,was the ordinary method adopted by Danford.'' (Danford was the owner of the bank of which Gundrum was cashier.)

In Morse on Banks & Banking, Section 169, the rule is stated as follows:

''Though the cashier may dispose of the bank's negotiable securities in the regular course of business, he cannot pledge its assets for the payment of an antecedent debt.''

In *Montgomery Bank & Tr. Co. v. Walker,* 181 Ala. 368 (61 So. 951), the court said:

''The cashier is the chief executive officer of the bank, through whom the financial operations of the bank are conducted, and while his authority is not unlimited, it exceeds that of the president. Morse on Banking, §152. The cashier has no inherent power, however, to pledge the assets of the bank for the payment of an antecedent debt. He may dispose of the bank's negotiable securities in the regular course of business, but he cannot pledge its assets for the payment of an antecedent debt.''

With these rules of law firmly established, we turn to the record in the case for answer to the question as to whether or not Hanrahan had authority to pledge the notes for the antecedent indebtedness of the Webster County Trust & Savings Bank upon the deposit. Said bank was, at the time in question, struggling for existence. It required the $8,000, to pay the balance against it for the clearances of that day and its outstanding drafts. The collateral agreement was on a printed form which was used by both defendant bank and the First Trust & Savings Bank. The negotiations with reference to the loan were taken up between Hanrahan, the cashier, and also a director of the Webster County Trust & Savings Bank, and E. H. Rich, the president and directing head of the defendant bank. Rich testified, in substance, that he arranged for a resolution when Hanrahan, the cashier, came down to make the loan; that the papers were given to Hanrahan, or the resolution might have been drawn up afterwards; that the board of directors of the Webster County Trust & Savings Bank were to have a meeting, to authorize the loan; that such a meeting was to be held,

and the resolution and collateral agreement were to be signed and placed, before the loan was definitely closed; that he knew that the Webster County Trust & Savings Bank was indebted to the First Trust & Savings Bank on the $6,500 deposit; and that he surely took enough collateral to cover the liability of the Webster County Trust & Savings Bank to both the defendant bank and the First Trust & Savings Bank.

Hanrahan testified, in substance, that, as he recollects it, "they [the defendant bank] said they would loan us enough money to pay our drafts that day, if we put up certain notes as collateral, and they gave me some *printed form* which they said they would require the board of directors to pass in the form of a resolution. They also gave me the note."

It thus becomes manifest that Hanrahan had both the note and collateral agreement before the meeting of the board of directors of the Webster County Trust & Savings Bank. At the meeting of the board of directors of the borrowing bank, Hanrahan acted as secretary, and kept the minutes. The material portion of the minutes is as follows:

"Moved by Healy, seconded by Allen, that the cashier be authorized to borrow from the First National Bank of Fort Dodge, by rediscount or bills payable, and to pledge such securities of the bank as may be necessary."

The lending bank was demanding the printed form of pledge, as a condition precedent to making the loan. Hanrahan was so informed. His knowledge as to this became the knowledge of the bank.

"Where a fact is communicated to a bank's director, as such, for the purpose of having him communicate it to the board, it is his duty so to communicate the information, and the bank is chargeable with knowledge of the fact, even though the director fails to communicate it."

Hanrahan had the printed form, and knew the demands of the lending bank. The bank was chargeable with the knowledge possessed by Hanrahan. The authority given Hanrahan by the board of directors, with full knowledge as to the demands of the defendant bank, was comprehensive and quite general in the powers conferred. We hold that, under the record, it is conclu-

sively shown that the cashier, Hanrahan, had full authority to make the pledge for all of the purposes therein expressed.

Our conclusions as to the foregoing make it unnecessary to consider estoppel and ratification, argued by the appellee.

The action of the trial court in overruling plaintiff's motion for directed verdict, and in sustaining a similar motion for the defendant bank, is correct, and the judgment rendered is hereby affirmed.—*Affirmed.*

STEVENS, C. J., and EVANS, ALBERT, and KINDIG, JJ., concur.

FAVILLE, J., takes no part.