**Parish Bank and Trust Company, Appellant, v. Wennerholm Bros. and Gus Wennerholm, Appellees.**

**Gen. No. 9,711.**

Opinion filed January 27, 1942.

W. J. Parish and V. A. Parish, both of Momence, for appellant.

Eva L. Minor, of Kankakee, for appellees.

Mr. Presiding Justice Wolfe delivered the opinion of the court.

On April 28, 1939, the circuit court of Kankakee county entered a judgment in favor of the plaintiff, the Parish Bank and Trust Company, against the defendants, Wennerholm Bros., and Gus Wennerholm, on a complaint on a promissory note, executed by the defendants, and containing a warrant of attorney to confess judgment. On May 19, 1939, the defendants filed a motion to open the judgment, accompanied by an affidavit setting forth that the note had been paid before the judgment was entered. The motion was allowed and the parties submitted the issues made by the complaint, motion and affidavit for trial by the court without a jury. The court entered judgment vacating the confessed judgment and the plaintiff has appealed.

Wennerholm Bros., was the firm name of a partnership composed of Gus Wennerholm and his brother, August Wennerholm, who operated a public garage and bought and sold automobiles. For about 20 years the partnership had been a customer of the plaintiff, borrowing money on its notes, and selling at a discount, the promissory notes taken by the firm in payment of automobiles sold by it. The notes thus sold to the plaintiff were indorsed by the partnership and until they were paid, there remained the contingent liability of the partnership for the full payment of the notes. It appears in evidence that on September 14, 1935, Wennerholm Bros., was indebted to the plaintiff to the extent of $2,775. This amount being apparently ·made up of the sum of the amounts due on notes held by the plaintiff against the partnership and an addi-

tional $675 borrowed on that date by Wennerholm Bros., from the plaintiff. The amount of contingent, or indirect liability of the partnership to the plaintiff, does not appear as of September 14, 1935.

On September 14, 1935, two promissory notes were prepared by the plaintiff, each for $2,775, and one of them is the note entered into judgment confessed on April 28, 1939. We shall designate the note, on which judgment was confessed, as note one, and the other as note two. Note one was payable on demand and signed by Wennerholm Bros., and by Gus Wennerholm. Note two was payable on October 14, 1935, and signed by Wennerholm Bros. Note one was payable on demand and contained a warrant of attorney to confess judgment at any time after its date. Note one contained no terms concerning a pledge, while note two referred to note one as being pledged to the plaintiff as collateral security for the payment of note one, and all other liabilities of Wennerholm Bros., to the plaintiff. The words of note two relative to the alleged·pledge now pertinent to be considered, are as follows: ''We hereby deposit with and pledge to said Bank as collateral security for the payment of the above note and all other liabilities of the undersigned and of any of each of the undersigned, (if more than one) to said Bank, or the legal holder of this note (whether direct or contingent, joint or several heretofore or hereafter contracted and howsoever and whensoever acquired by said Bank or legal holder) the following property, the value of which is $———, *viz*: Wennerholm Bros. Demand Note——$2,775.00.''

It was the understanding of the plaintiff and Wennerholm Bros., that note two was to be paid in monthly instalments of $100. During October 1935, Wennerholm Bros., paid $100 on note two, executed a new note for $2,675, and took up note two. Payments of various amounts were made by the partnership on note two, from time to time, and upon each payment

a new note was given by it for the balance then due, and the immediate successor-note to note two was taken up and canceled.

By the process of partial payments, and the renewal of notes, the plaintiff held the renewal note of Wennerholm Bros., dated December 20, 1937, for $500 due in 30 days after its date. On January 1, 1938, August Wennerholm withdrew as partner from the firm of Wennerholm Bros., and the business of Wennerholm Bros., was continued by the Wennerholm Sales and Service, a partnership composed of Gus Wennerholm and his son, Edward Wennerholm, who had been acting as the manager of Wennerholm Bros., since September 1934. On January 28, 1938, the Wennerholm sales and Service signed the final and twenty-sixth renewal note, payable to the plaintiff on February 28, 1938, and took up the note dated December 20, 1937. Each of the renewal notes contained the terms of the pledge stated in note two, which have been above quoted.

On January 17, 1938, Edward Wennerholm signed a financial bank statement, which, it may be fairly and justly inferred from the evidence and exhibits in the record, was given to the plaintiff prior to January 29, 1938. In this statement, showing the assets and liabilities of Wennerholm Sales and Service, Edward Wennerholm stated that the partnership of Wennerholm Sales and Service was composed of Gus Wennerholm and Edward Wennerholm. On January 29, 1938, the plaintiff accepted notes of Wennerholm Sales and Service to the aggregate amount of $4,017 and credited the direct liability account of Wennerholm Bros., with the amount, leaving the total direct liability of Wennerholm Bros., to the plaintiff on that date as $1,700, as is shown by the ledger sheets introduced in evidence by the plaintiff. The indirect liability of Wennerholm Bros., to the plaintiff on January 29, 1938, as shown by the liability sheet, was $19,507. On

January 29, 1938, the plaintiff opened a new liability
sheet in the name of Wennerholm Sales and Service,
and the direct and indirect liabilities of Wennerholm
Bros., was carried forward to the new sheet against
Wennerholm Sales and Service.

Edward Wennerholm testified that his father, Gus
Wennerholm, withdrew as a partner from the firm of
Wennerholm Sales and Service on the first day of
March 1938. Officers of the plaintiff testified that the
first knowledge which they had that Gus had with-
drawn as a partner was in May 1939, when Edward
Wennerholm testified as a bankrupt in bankruptcy
proceedings. Whether the plaintiff knew it or not,
on April 1, 1939, Edward Wennerholm was the sole
owner of Wennerholm Sales and Service. On April 1,
1939, the indirect liability of Wennerholm Sales and
Service to the plaintiff was $3,923.09, the direct lia-
bility was $2,230. On April 1, 1939, Edward Wenner-
holm gave to the plaintiff a note for $4,650, signed by
himself and Wennerholm Sales and Service. This
note was due May 1, 1939, and secured by a pledge
of five $1,000 U. S. Government Bonds. This note
appears in the record as plaintiff's exhibit 9. The
amount of the note was added to the direct liability
of Wennerholm Sales and Service on plaintiff's lia-
bility sheet, making the direct liability $6,880 on
April 1, 1939. On April 4, 1939, the amount of the
note was deducted from the direct liability leaving the
direct liability on April 4, 1939, as shown by the
liability sheet, $2,230. It does not appear in evidence
what was the consideration for the note, nor who
owned the bonds on April 1, 1939. On May 2, 1939,
Edward Wennerholm filed a petition in bankruptcy.
We are informed by counsel for plaintiff that, "On
May 2, 1939, the bank disposed of the $5,000.00 in
bonds and applied the proceeds in payment of the
$4,650.00 note, marked the note paid but still retained
possession of it. A credit memo for the balance over

was attached to the other notes of the firm." The note dated April 1, 1939, also contained the terms of the pledge found in note two, above quoted, and included note one as subject matter of the pledge, thus: "5M U. S. Treasury 2½% Bonds due 1953. Wennerholm Note 2775. Indirect Sept-14-1935-Signed Wennerholm Bros., and Gus Wennerholm."

It is also stated by counsel for the plaintiff that, "Shortly before May 2, 1939, when bankruptcy proceedings were filed, the plaintiff took judgment by confession on the $2,775.00 note signed by Gus. That was on April 28, 1939. On that date the indirect liabilities of Wennerholm Sales and Service were $3,705.18 and the direct liabilities $6,880.00, making a total of $10,585.18. On the date judgment was entered, the bank held plaintiff's Exhibit 9, a collateral note for $4,650.00 dated April 1, 1939, signed by Wennerholm Sales and Service and pledging $5,000.00 in U. S. bonds and the $2,775.00 note signed by Gus as security for all obligations of Wennerholm Sales and Service, using the identical language as was used in the collateral note signed by Wennerholm note September 14, 1935."

Basing its contention on circumstances and facts appearing in evidence and the inference to be drawn therefrom, it is urged by the plaintiff that Gus Wennerholm was a partner of the firm of Wennerholm Sales and Service on April 28, 1939, and during all the time in question. The plaintiff then states: "The issue, then, as we see it, is, did the bank on April 28, 1939, the day the judgment was entered, hold the Gus Wennerholm note "(note one)" as collateral security for all indebtedness owed by Wennerholm Sales and Service to the bank at that time."

The contract of pledge also contained the following: "In case said Bank or the legal holder of this note shall at any time hereafter be of the opinion that said property (including all substitutes therefor and addi-

tions hereto) is worth less than or has declined below the value above stated, or in case the undersigned or any or either of the undersigned (if more than one) shall fail to furnish additional security satisfactory to said Bank or legal holder whensoever called for, or shall fail to pay at maturity or any time thereafter the above note, or such other liabilities, or shall be or become insolvent, or shall die, or a judgment or decree be entered against the undersigned, or any or either of the undersigned (if more than one), then and in each and every such case or contingency full power and authority is hereby given to said Bank or legal holder to sell, assign and deliver said property and all substitutes therefor, and additions thereto, or any part thereof, at any time and from time to time, at any Broker's Board, or at public or private sale, at the option of said Bank or legal holder, without advertising the same, or making protest, or demanding payment, or giving any notice of any kind to anyone, and said Bank or legal holder may be a purchaser at said Broker's Board, or public sale or sales; and after deducting from the proceeds of any sale or sales, all costs, expenses and reasonable attorney's fees incurred in and about such sale or sales or the protection or collection or conversion of said securities, or the collection of the above note or such other liabilities, the residue of such proceeds shall be applied upon the above note and such other liabilities, whether then due or not due, as and in the proportion said Bank or legal holder of the above note may deem best returning the surplus, if any, to the undersigned.''

As a general rule one personal obligation of a debtor cannot become a pledge, or collateral security for another obligation of the same debtor. (49 C. J. 903, sec. 21.) The rule, or principle, is well expressed in 21 Ruling Case Law 903, sec. 5.

''In a true sense one personal obligation of a debtor proper cannot become the subject-matter of a pledge

or collateral security proper, or in the sense of pledged collateral, for the security of another obligation of the same debtor, for the reason that a debtor's own personal obligation is no part of his personal property, and cannot be the subject of such a pledge—is a liability and not an asset. Thus the individual note of one partner given to a firm creditor, and payable at maturity of a firm debt, is merely a promise by one partner to pay the firm debt, is not a collateral security for the debt, and the creditor is not barred from suing the firm because of his laches in not collecting the note before the maker's insolvency. This does not mean, however, that two evidences of the same debt may not outstand, the one as collateral to the other. On the contrary, it has generally been held that a note which has collateral securities attached, or a lien incident may be treated as collateral to another note of the same person, and both the note and its collateral, or lien enforced so far as to preserve the creditor the benefit of the collateral or lien.'' The following cases support the above text: *Tyner v. Stoops,* 11 Ind. 22, 71 Am. Dec. 341; *Mercantile Factors' Corp. v. Warner Bros. Pictures,* 215 App. Div. 530, 214 N. Y. Supp. 273; *International Trust Co. v. Union Cattle Co.,* 3 Wyo. 803, 31 Pac. 408, 19 L. R. A. 640; *Jones v. Third Nat. Bank of Sedalia,* 13 F. (2d) 86; *Dibert v. D'Arcy,* 248 Mo. 617, 154 S. W. 1116; *In re Waddell-Entz Co.,* 67 Conn. 324, 35 Atl. 257; *Dies v. Wilson County Bank,* 129 Tenn. 89, 165 S. W. 248. See also *Hallowell v. Blackstone Nat. Bank,* 154 Mass. 359, 28 N. E. 281, 13 L. R. A. 315; *Norfleet v. Pamlico Insurance & Banking Co.,* 160 N. C. 327, 75 S. E. 937.

The consideration of note, one, signed by Wennerholm Bros., and by Gus Wennerholm, was represented by note, two, signed by Wennerholm Bros. It is true that a creditor may *hold* two notes of his debtor for the same debt, one note being collateral to the other, but the creditor may make only a single proof against

the debtor and have but one satisfaction. Upon full payment of note two, note one was discharged, not having been the subject matter of a pledge in the true sense. (*Dies v. Wilson County Bank,* 129 Tenn. 89, 165 S. W. 248.) Under the evidence presented, the trial court properly held the note sued on had been paid.

The appellant contends that the affidavit filed in support of the motion to set aside the confessed judgment, did not have verified or certified copies of all papers attached to the affidavit upon which the appellees relied, as provided by Supreme Court Rule No. 26. The attorney for the appellant made a motion to strike the appellees' motion to open up the judgment, because it did not have the papers relied upon for their defense attached. The court overruled the motion to strike. The appellant objected to the introduction in evidence of the renewal notes, which tended to prove the payment of note No. 2. The allegation of the motion to open up the confessed judgment, is that note one was paid. Technically, we do not think that the appellant has properly presented this question to this court for review, as the record does not contain the affidavit to which the plaintiff's motion to strike is addressed. On page 2, of the record, we find the judgment. On page 6, we find the motion to set aside the judgment and for leave to plead; on page 7, is the affidavit of Edward Wennerholm, in support of his motion to open the judgment. On pages 11, 12, and 13, we find another affidavit signed by Edward Wennerholm, which was filed on the 12th day of July, 1939. On page 14, of the record, is the order of court, that the motion of the plaintiff to strike the defendants' affidavit is allowed and leave granted to the defendants to file a new affidavit in support of their motion to open the judgment, and for leave to plead thereto, by July 17, 1939, at 10 o'clock a.m. On the same page there is a notation, ''New affidavit is presented and

filed by the defendants.'' On page 18, of the record, we find the motion of plaintiff to strike the affidavit of the defendants, because there is not attached to said affidavit, sworn certified copies of all papers upon which said defendants herein, intended to rely, and that said motion of defendants did not comply with the statute. On page 19, is the order of court overruling the plaintiff's motion to strike the affidavit of the defendants, and the order opening the judgment and giving each side of the litigation 10 days' time to file further pleadings if they so desire.

As before stated, we think that with this state of the record, that technically there is nothing for this court to pass upon, but assuming that the clerk, in arranging the files, should have placed the order of court contained on page 14, before the affidavit, as contained on pages 11, 12 and 13, and that the motion to strike the affidavit of the defendants, as contained on page 18, of the record, related to this affidavit of the defendants, then the trial court did not err in overruling plaintiff's motion to strike, because there is nothing in the affidavit of defense that would show the court that the defendants had any writings of any kind to prove their defense of payment. The affidavit says that the note was paid, and then enumerates the amounts which were paid at different times. Whether they were paid by cash, checks, or by renewal notes, does not appear.

It is also insisted by the appellant that it was reversible error for the court to admit in evidence the renewal notes produced by the defendants. Technically, it was probably error for the court to admit these notes in evidence. However, we do not see how the plaintiff could, in any possible manner, be prejudiced by admitting in evidence canceled notes that had been prepared by themselves, and signed by and then paid by the defendants. The plaintiff does not contend that these notes were not executed and paid by

the defendants. How the plaintiff could be surprised, or not ready to meet the issues, as presented by these canceled notes, we are unable to see. We do not think, under the facts presented in this case, that it was reversible error for the court to admit the canceled notes of the defendants in evidence.

It is claimed by the appellant that over their objection, the trial court admitted evidence of payments made by the appellees to the appellant, after the date of the original judgment was entered, to-wit, April 28, 1939. The appellant itself is the first one to commit this error, if it is considered an error to admit such evidence. On page 41, of the abstract record page 117, we find in the cross-examination of Edward Wennerholm, conducted by Mr. Varnum A. Parish, attorney for the appellant, concerning the payments that he had made to the appellant bank; that after the testimony in regard to the payment of a note secured by bonds, Mr. Parish asked the witness, ''You do not mean that all obligations of Wennerholm Sales and Service have been paid, do you?'' To which the witness replied, ''Practically so.'' Then the question was asked of the witness, ''What do you base your statement on?'' The witness proceeded to answer, ''That my liability was secured by mortgages on horses, new cars and used cars.'' The attorney then asked him, ''Do you know anything about the claim filed in the bankruptcy Court?'' The witness answered, ''I do.'' He then stated that the bank had received approximately $3,300 as payment on the account, and about $5,200 on the sale of Government Bonds, which was applied on the note of $4,500, which is plaintiff's exhibit No. 9. The other testimony in regard to payments after judgment, were relative to this same note, brought out by cross-examination of Mr. Parish, one of the officers of the appellant bank. If there were any errors committed, the plaintiff himself invited it by the cross-examination of one of the defendants,

and the introduction in evidence of the exhibit No. 9. Under the circumstances, as revealed by the evidence in this record, the court did not commit any error by the introduction of this evidence.

We find no reversible error in the case, and the judgment of the trial court is hereby affirmed.

*Affirmed.*