MICHAEL C. McELIGOT, Respondent, Appellant, *v.* THE STATE OF NEW YORK, Appellant, Respondent.

(Claim No. 19004.)

Third Department, January 9, 1936.

*Morton Lexow* [*Alton W. Teale* of counsel], for the claimant-respondent-appellant.

*John J. Bennett, Jr., Attorney-General* [*John L. Campbell, Assistant Attorney-General,* of counsel], for the defendant-appellant-respondent.

HILL, P. J. Cross-appeals from a judgment of the Court of Claims whereunder claimant recovered $11,070, with interest from June 4, 1929, to the date of the judgment, May 7, 1935. The recovery and interest aggregate $15,005.38.

Claimant in 1926 contracted with the State whereby he was to receive $229,239 for the material and the labor required " for heating work and service connections in connection with the construction of certain tunnels and piping, etc., for the four cottages and attendants' home of the Female Infirm Group and to the hospital in the hill section at Letchworth Village, Thiells, New York, in accordance with certain specifications and drawings." His claim, prosecuted before the Court of Claims, contains nine items amounting to $59,662.55. He appeals for the reason that the Court of Claims disallowed certain of the items. The State contested the entire claim and appeals from the judgment. I discuss the items of the claim by the numbers used in the claim filed and in the briefs of the parties.

" First Item." The court has allowed claimant the amount of this item, $72 for thirty-eight cubic yards of extra earth excavation and $998 for thirty-eight additional cubic yards of concrete, a total of $1,070. The excavation was unnecessary. It was done in compliance with incorrect levels and grades on the drawing furnished by the State. The tunnel or trench when completed was below the level of an existing tunnel with which connection was to be made. The contractor was required to follow the levels given upon the drawings under the following provision of the contract: " The bottoms of all excavations shall be trimmed to the levels or grades indicated on the drawings." The extra depth of the tunnel was required, under the contract, to be filled with concrete. " If excavations have been carried too deep, the excess space shall be filled with concrete." The court properly allowed this item, as the error was made by the State's representative.

" Second Item." This was withdrawn.

" Third Item." Claimant asks $8,500 because in September he was directed to cease the construction of a part of a tunnel in what is called the " valley section " and not permitted to resume work until December 15, 1926. The extra cost, as testified to on behalf of the claimant, arose through the fact that the ground was frozen in December when he was permitted to resume work; that the excavation was being made before the ground froze at ninety-five cents a cubic yard; and in December it was necessary to do the work by hand at a cost of two dollars per cubic yard. There were 2,400 cubic yards of this excavation. Further additional cost is claimed on account of installing temporary conduits, the extra cost for heating water, stone, sand and concrete materials. This delay is the subject of conflicting findings. I quote from the decision. " 14. That the direction by the State Engineer to suspend excavation of the main tunnel at the highway during the time the water line was being shifted was in accordance with the provisions of the contract." Without quoting directly the fifteenth finding, it is there stated that the suspension of work did not materially delay the contract. The sixteenth finding is in substance that if any excavation was done by hand, this was because that method was more economical " and not because the ground was frozen." I quote *verbatim* the seventeenth finding: " 17. That the excavation on the main tunnel at the highway was completed on or before September 1st, 1926, before the ground was frozen." Findings inconsistent with the foregoing appear in claimant's requests to find. Number fifteen thereof refers to the construction of the tunnel in the " valley section." The sixteenth and seventeenth I quote. " 16. That in the month of July, 1926, the claimant undertook the excavation and construction of the tunnel and conduits as set forth in paragraph ' 15 ' of these findings and continued said work until the early part of September, 1926, and while engaged in the performance of said work, the claimant was ordered and directed by the State of New York, through its Superintendent in charge of construction on the premises, to stop and suspend the work in which he was then engaged. 17. That by reason of the order of suspension of work given by the State of New York, this claimant was prevented from performing certain of his excavation and construction work for the tunnels and conduits in said section from the month of September, 1926, until the middle of the month of December, 1926." The State does not contend that it would have been reasonable to have stopped claimant from September until December. The provision of the contract which seems to apply provides: " The work shall be done in sections if necessary, and at such times

and in such a way as to cause the least inconvenience to the State and with proper consideration for the rights of other contractors." Nothing appears in the evidence which would justify the delay of the " valley section " tunnel work until the ground was frozen, which would be the condition ordinarily in December. I am unable to ascertain what the Court of Claims has found as to the facts. The conflicting findings should be reversed, the judgment modified by remitting this item to the court for a new trial upon the merits.

" Fourth Item." The basis for this is the claim that the labor costs to the claimant in constructing a new six-inch steam line in an old tunnel were increased from $6,400 to $9,600 through the refusal of the State to shut off the steam from the old pipes in the tunnel during the time when claimant's workmen were actually installing the new construction. There is evidence that the temperature in the tunnel in which claimant's employees were forced to work was about 150° F. This was caused through the refusal of the State to shut off the steam. The court has found that " the temperature in said tunnel at all times exceeded 130° F." The evidence is undisputed that the men worked forty-minute shifts, resting in the air outside the tunnel twenty minutes after each working period. The evidence is not controverted that the labor cost was $9,600. The twenty-minute rest period out of each sixty minutes would sustain a finding that the claimant's labor cost was $3,200 in excess of what it would have been had the steam been shut off from the old pipes during the period the men were working. Findings of fact 19, 20 and 21 in the decision have to do with this claim. In substance it is there found that the contractor examined the site before he signed the contract and knew that the old steam pipes were leaking and knew that the steam passing through the pipes was used to cook food and take care of the laundry for 1,500 inmates at Letchworth, and that the contract was signed knowing that there was no provision contained therein requiring that the steam be shut off. However, the court found claimant's requests to find numbered 22, 23, 24 and 26 in connection with this item. These also recited a personal inspection and a consultation by the contractor " with one Bonnaud who was the then resident engineer at the Letchworth Village Institution and the claimant was informed by said resident engineer that when work was commenced in said tunnel that the steam would be shut off to permit workmen to perform their labor in said tunnel without the presence of such escaping steam," and further, that the contractor relied upon the statements made by Bonnaud and computed his labor costs and submitted his bid upon the belief that work could be done in the tunnel at times when the steam was shut off; also it is found that

laborers were able to work in the tunnel but forty minutes out of an hour, this to be followed by a twenty-minute rest period to obtain fresh air. The contractor had a right to rely on the good faith of the State and to expect that the contract would be construed in a reasonable and fair way (*Shirai* v. *Blum*, 239 N. Y. 172), and to understand that " The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal." (*Wood* v. *Duff-Gordon*, 222 N. Y. 88, 91.) It seems unreasonable to assume that the State expected human beings to work in an inclosed tunnel where live steam was escaping, with all the attendant dangers to the workmen and where the temperature at all times exceeded 130° F. The contractor had a right to assume that there was no such inhuman intent and his belief that the steam would be shut off was encouraged by one in authority, an employee of the State, the resident engineer in charge of the maintenance of the machines, including the steam line.

The findings in the decision which disallow this item should be reversed and the judgment should be increased by reason of this in the sum of $3,200, with interest thereon from June 4, 1929.

" Fifth Item." The claimant was required by the State to replace and rebuild " distorted sections " of a tunnel which he had installed under his contract. A claim for $19,500.37 was made. The court allowed the claimant $10,000. The distortion as described in the findings is that the ends of the tunnel moved about two inches and that certain of the sections were splintered and broken. That this occurred because the plans furnished by the State did not provide for sufficient expansion space and material between the ends of the concrete sections. The court found: " That before claimant began the work of building and installing the said tunnel, he notified the State that sufficient expansion was not provided for said tunnel and that the design thereof was faulty and claimant then requested the State to permit him at his own expense to provide additional expansion for said tunnel; that the · State refused to permit claimant to provide any additional expansion and arbitrarily and unreasonably directed claimant to build and install the said tunnel as designed." The evidence of claimant indicates that the expense of replacement- and repair, irrespective of any profit, was $17,513.73. There is no evidence giving detail which indicates that the cost was less. The judgment should be increased by the sum of $7,513.73, with interest from June 4, 1929.

" Sixth Item." This has been settled.

" Seventh Item." A charge of $401.69 is made for installing two seven-inch valves. The court has found that these valves were installed and were not included in the plans and specifications

and that the reasonable cost was the amount claimed. However, there is no evidence, except the oral testimony given by the claimant himself, that these were installed at the direction of the State. The argument in the Attorney-General's brief is that these valves were placed for the convenience of the contractor. The court was not required to believe an interested witness and the judgment in this regard should be affirmed.

" Eighth Item." This arose because of the installation and replacement of certain pressure valves. The court has found that the contract required the contractor to furnish and install " a six-inch pressure regulating valve in the power house; " that in accordance with the provisions of the contract and specifications, plans for the proposed valve were submitted to the State Architect and were by that official approved. A valve in accordance therewith was installed and the valve as placed was approved. The claimant was paid for the valve. The findings continue: " That after said valve had been a long time in use claimant was notified by the State Architect that said valve was not functioning properly and that thereafter and after specifications and drawings were furnished by the claimant and approved by the State Architect another valve was installed by claimant." This second valve was later removed by the State and replaced by another. The expense to the State was $1,278. Each of the two valves earlier placed have been returned to the claimant. He has been charged with the amount paid by the State for the third valve. He asks to recover that amount, together with $285.03, the actual cost of installing the second valve. The contractor had acted within the terms of the contract, had submitted plans for the valves which had been approved by the State authorities as required in the contract. The additional cost and the expense of the new valve was made necessary through the error of the State authorities and without fault on the part of the claimant. He is entitled to recover the aggregate of the two sums mentioned, $1,563.03.

" Ninth Item " is for damages for withholding payment of final estimate. The judgment in this regard should be affirmed.

RHODES, CRAPSER, BLISS and HEFFERNAN, JJ., concur.

Judgment modified by increasing the amount of the recovery from $11,070 to $23,346.76, with interest thereon from June 4, 1929, to the date of the entry of the modified judgment; and by reversing so much of the decision and judgment as disallowed the " Third Item " of claimant's claim, as to which a new trial is granted.

The court reverses the following findings of fact contained in the decision: Nos. 14, 15, 16, 17, 18, 21, 36, 37 and modifies No. 32 by increasing the damages therein mentioned from $10,000 to $17,513.73.

The court reverses the following findings contained in the State's requests to find: Nos. 3, 4, 5, 6, 7, 11 (Nos. 16 and 17 have no relation to any issue tried), 19 and 20.

The court also reverses the decisions made by the following findings and refusals in the claimant's requests to find: The refusal of the court to find Nos. 18, 19, 20 (the determination as to item 3 to which the three findings refer is reversed and a new trial granted). The refusal to find Nos. 25, 27 and 28, which findings are now made by this court. The refusal to find No. 39 at the amount fixed by this court is reversed, and such finding with damages fixed at $17,513.73 is now made by this court.

The court further finds that claimant is entitled to recover $1,563.03 on account of item 8.