In the Matter of the Application of the COMMERCIAL CASUALTY INSURANCE COMPANY, Petitioner, Appellant, for an Order Commanding MORRIS S. TREMAINE, as Comptroller of the State of New York, Respondent, to Pay to the Petitioner Herein the Funds in His Hands Applicable to the Payment of Certain Judgments Heretofore Recovered by the Petitioner Herein against the State of New York with Interest to the Date of Payment.

MICHAEL C. McELIGOT (McELLIGOTT), Impleaded Defendant, Respondent; MARGARET McELLIGOTT and Others, Intervenors, Respondents.

Third Department, July 11, 1939.

*I. J. Beaudrias,* for the appellant.

*John J. Bennett, Jr., Attorney-General* [*Leon M. Layden, Assistant Attorney-General,* of counsel], for the respondent Tremaine.

*Joseph E. North,* for certain intervening defendants, respondents.

*Guggenheimer & Untermyer [Milton E. Mermelstein of* counsel], for The Central Foundry Company, intervening defendant, respondent.

*Coffey, Gertner & Richardson [Milton E. Mermelstein and Edward L. Coffey* of counsel], for Edward C. Oertzen, intervening defendant, respondent.

HEFFERNAN, J. Petitioner has appealed from a final order of the Albany Special Term of the Supreme Court, as resettled, denying its application for an order under article 78 of the Civil Practice Act directing the State Comptroller to pay to it certain moneys in his possession constituting the balance of a final judgment of the Court of Claims against the State of New York in favor of Michael C. McEligot (McElligott) and petitioner as assignee.

In June, 1926, McElligott entered into a contract with the State of New York relating to the construction of underground service tunnels and the installation of service piping and other equipment at the New York State Hospital at Letchworth Village. The petitioner as surety executed bonds to the State on McElligott's behalf in connection with the work. Apparently McElligott completed his contract in 1929 and received the final payment. On July 31, 1929, McElligott filed a claim against the State of New York for extra expense caused by alleged interference on the part of the State in connection with the execution of the contract. Prior thereto and on June 11, 1929, McElligott made a blanket assignment of this claim to petitioner. The instrument recites that the assignment was given to the petitioner " to the extent of all losses, damages or charges of every nature or description incurred or borne by the said Commercial Casualty Insurance Company in connection with or arising out of bonds executed on behalf of the said Michael C. McElligott." In the claim which he filed with the State McElligott made reference to this assignment. Thereafter and prior to any adjudication of the Court of Claims McElligott made various other assignments to the intervening defendants for specific amounts and these assignments were filed with the Comptroller of the State. The trial of the claim occurred on various dates between October 26, 1932, and November 3, 1932. On the trial petitioner intervened and proved the making and delivery of its assignment. A dispute occurred between McElligott and petitioner as to the amount of petitioner's losses. The Court of Claims did not attempt to pass upon that issue but on May 7, 1935, rendered a judgment in favor of McElligott and petitioner in the sum of $15,005.38 as their interests might appear. On appeal that amount was increased by

our court to the sum of $32,821.65. (*McElligot* v. *State of New York*, 246 App. Div. 121.) One item was remitted to the Court of Claims for a new trial. By stipulation of the attorneys, however, the claimants consented to a dismissal of this item and in return therefor the State agreed to pay the judgment rendered by our court.

Thereafter and on June 10, 1936, petitioner commenced an action against McElligott in the Supreme Court of Chenango county to have determined its interest in the judgment of the Court of Claims. The intervening defendants were not parties to that action nor were they given any notice thereof notwithstanding the fact that prior to the institution of the suit they had recorded their assignments with the Comptroller of the State. On March 26, 1937, the Supreme Court action in Chenango county was decided in favor of petitioner and judgment was rendered in its favor to the effect that it had a prior interest in the fund by virtue of its assignment to the amount of $23,879.90. This judgment was larger than the amount of the fund then remaining. McElligott appealed from this judgment and the appeal was later dismissed for failure to prosecute. Thereafter a certified copy of this judgment was served on the Comptroller and petitioner made a demand for payment of the balance of the fund. The Comptroller refused to comply with the demand and this proceeding was then instituted.

It also appears that some of the intervening defendants have commenced an action against the petitioner and other assignees, which action is now pending in the Supreme Court of Otsego county for the purpose of securing the adjudication of the rights of all parties in the fund. In that action petitioner moved for an order for judgment in its favor as to one of the plaintiffs and for an order dismissing the complaint as to the other plaintiffs. These motions were denied and appeals from such orders were submitted to this court for determination on the argument of the case under discussion.

On this appeal the only contention made by petitioner which merits discussion is its claim that the judgment of the Court of Claims and the judgment of the Supreme Court are binding upon the intervenors even though they were not parties thereto and that consequently it is entitled to the balance of the fund in the hands of the comptroller. We disagree with this contention.

It has long been settled that with certain exceptions not material here strangers to a judgment or decree are not bound thereby and that it will not affect the rights of those who are neither parties nor privies to the suit and who have never had an opportunity to be heard. The proceeding in the Court of Claims was merely to

determine whether or not the claim had merit. That court had no authority to determine the nature or extent of petitioner's interest in that claim nor did it attempt to do so. It merely found that McElligott had made an assignment to petitioner. The extent of petitioner's interest in that claim was not determined until the rendition of the judgment in its favor in the Supreme Court of Chenango county. Long before that action was commenced the various other assignments of the same claim made by McElligott to the intervening defendants had been executed and filed, of all of which petitioner had notice. The holders of these subsequent assignments were not parties to the Supreme Court action. The other assignees are not bound by that judgment. They are entitled to their day in court for the purpose of having determined as among themselves and petitioner the validity and priority of petitioner's assignment. That question cannot be determined in this proceeding.

In *Kahn* v. *Walsh Co.* (72 Misc. 20), the court had before it the question whether a party to a contract, after notice of the assignment of a claim against him, can bind the assignee by suing the assignors and " thus deprive the assignee of his day in court." The court said: " But no person ought to be bound by a judgment to which he is not a party. The rule that estoppels bind parties and privies applies only to an event arising *after the event* out of which the estoppel arises. [*Masten* v. *Olcott*, 101 N. Y. 152, 161; *Mitchell* v. *Einstein*, 105 App. Div. 421.] Black on Judgments, referring to persons bound as privies to parties bound by judgments, says: ' In the second place privies, in such sense that they are bound by the judgment, are those who acquired an interest in the subject-matter after the rendition of the judgment.' "

In *Masten* v. *Olcott* (*supra*), the Court of Appeals, in refusing to bind parties in privity, stated: " This rests upon the broad principle of justice that a person ought not to be bound by the result of a litigation to which he was not a party. The rule that estoppels bind parties and privies is no exception. This applies only to a privity arising after the event out of which the estoppel arises and the person in privity is bound by or entitled to the benefit of the estoppel because he comes in after the fact creating the estoppel by succession or representation to the original title or interest. (*Campbell* v. *Hall*, 16 N. Y. 575.) "

The assignee of a right of property or chose in action is concluded by a judgment for or against his assignor in a suit begun before the assignment, but not where his rights vested prior to the commencement of the action, except as the rule may have been altered by statute, or where he has been notified to defend the action and failed to do so. (34 C. J. 1018.)

One is not a privy to a judgment where his succession to the rights of property thereby affected occurred previous to the institution of the suit. (34 C. J. 1012.)

In *Gerber Co.* v. *Thompson* (84 W. Va. 721; 100 S. E. 733) the West Virginia Supreme Court of Appeals in discussing the question of privity which will render judgment binding on a person not a party said: " It is well settled that a judgment is conclusive, not only upon the parties to the litigation, but also upon all persons who are in privity with them. Privity is said to be a mutual or successive relationship to the same rights of property, and if it is sought to bind one as privy by an adjudication against his predecessor in title, it must appear that at the time he acquired the right, or succeeded to the title, it was then affected by the adjudication, for, if the right was acquired by him before the adjudication, then the doctrine cannot apply. [Black on Judgments, § 549; Freeman on Judgments, § 162; *Dull* v. *Blackman*, 169 U. S. 248; *Bensimer* v. *Fell*, 35 W. Va. 15; 29 Am. St. Rep. 774; *Maxwell* v. *Leeson*, 50 W. Va. 361; *Hudkins* v. *Crim*, 72 id. 418; *Steel* v. *Long*, 104 Iowa, 39.] It will therefore be seen that it was necessary, not only to show that the plaintiff in this suit was the assignee of the defendant in the other suit, but that it became such assignee after the institution of such former suit. This does not appear from the proof submitted, and for that reason the court erred in his findings upon the plea of *res judicata.*"

In discussing the same subject in *Hawkeye Life Ins. Co.* v. *Valley-Des Moines Co.* (220 Iowa, 556; 260 N. W. 669) the Supreme Court of Iowa said: " Privity means a mutual or successive relationship to the same rights of property (*McConnell* v. *Poor*, 113 Iowa, 133, *loc cit.* 138; 84 N. W. 964; 52 L. R. A. 312; *McDonald & Co.* v. *Gregory*, 41 Iowa, 513; *Leach* v. *First National Bank of Fort Dodge*, 206 Iowa, 265, *loc cit.* 270; 217 N. W. 865). It is also another well-settled rule that, in order to make such judgment or decree binding, the rights of the party sought to be bound must accrue subsequently to the commencement of the suit. 34 C. J. p. 1012, note 10. By analogy, see *Cedar Rapids Cold Storage Co.* v. *Lesinger*, 188 Iowa, 1364; 177 N. W. 548. One is not privy to a judgment where his succession to the rights of property thereby affected occurred previously to the institution of the suit. *Doctor Jack Pot Mining Co.* v. *Marsh*, (D. C.) 216 F. 261; *Chester* v. *Bakersfield Town Hall Assn.*, 64 Cal. 42; 27 P. 1104. The rule seems quite clearly stated in *Leach* v. *First National Bank of Fort Dodge*, 206 Iowa, 265; 217 N. W. 865, where we said: ' Privity is said to be a mutual or successive relationship to the same rights of property, and if it is sought to bind one as privy by an adjudication against another with whom he

is in privity, it must appear that at the time he acquired the right, or succeeded to the title, it was then affected by the adjudication, for, if the right was acquired by him before the adjudication, then the doctrine cannot apply.' "

There is another most persuasive and most convincing reason why the order under review should be upheld. If the intervening defendants are concluded and bound by the judgments of the Court of Claims and the Supreme Court, and are therefore foreclosed from litigating the validity and priority of petitioner's assignment, then in all cases of this character the door is opened wide to fraud and collusion. Under such circumstances any contractor may prefer one creditor against all others and thereby perpetrate fraud and injustice upon those who have contributed labor and material to his undertaking. Such a result would be intolerable.

The order appealed from should be affirmed, with fifty dollars costs and disbursements to respondents, the costs to be divided among the respondents filing briefs.

HILL, P. J., CRAPSER and BLISS, JJ., concur.

Order affirmed, with fifty dollars costs and disbursements, the costs to be divided among the respondents filing briefs, each respondent to be paid his printing disbursements.